UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 10-96-GWU


RHONDA JEAN ABDON,                                          PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                           DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of

1

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher

4

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Rhonda Jean Abdon, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the thoracic and lumbar spine; supraventricular tachycardia status post ablation in May, 2007; obesity; a panic disorder; posttraumatic stress disorder; being status post fracture of the left radius and ulna; being status post fracture of the cervical spine; and being status post disruption of the right shoulder secondary to a January, 2007 automobile accident.  (Tr. 12).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Abdon retained the residual functional capacity to perform a significant number of jobs existing in the

economy, and therefore was not entitled to benefits.  (Tr. 14-19).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 36 to 38, high school equivalency education, and lack of transferable work skills could perform any jobs if she were capable of "light" level exertion, and also had the following additional restrictions.  She:  (1) could stand one hour at a time, but must be able to walk for five minutes every hour and must be able to shift her position; (2) could occasionally look up and down and turn her head right or left, but could rarely hold her head in a static position; (3) could rarely crouch, squat, or climb ladders; (4) could occasionally twist, stoop, bend, and climb stairs; (5) could use her hands 20 percent of the time in an eight hour workday to grasp, turn and twist objects, could use her fingers 75 percent of the time in an eight hour workday for fine manipulation, and could use her arms 5 percent of the time in an eight hour work day to reach; (6) could be expected to be absent from work about two days per month; and (7) would have a moderately impaired ability to deal with the stresses of a day-to-day work environment and would be limited to a low stress environment. The ALJ also specified that the plaintiff's attention and concentration was not impaired and her ability to relate to others including fellow workers and supervisors was not substantially impaired.  (Tr. 53-5).  The VE responded that there were jobs that such a person could perform, and proceeded

to give the numbers in which they existed in the regional and national economies. (Tr. 55).

On appeal, this court must determine whether the hypothetical factors are supported by substantial evidence.  Finding that there are significant errors in the decision below, a remand will be required for further consideration.

Mrs. Abdon alleged disability due to a variety of musculoskeletal complaints, problems with her heart racing, anxiety, and migraine headaches.  (Tr. 40, 151). Although she sought treatment from numerous sources and made repeated emergency room visits, the main issue on appeal concerns the weight given by the ALJ to residual functional capacity assessments issued by three of her treating physicians:  cardiologist Sheldon L. Brownstein, orthopedist Michael A. Grefer, and neurologist Todd Perkins.

The ALJ, although giving little detail, stated that she found Dr. Brownstein's opinion "highly probative" and clearly intended to give it controlling weight.  (Tr. 17). The hypothetical factors given to the VE did track Dr. Brownstein's assessment, with the exception of the ability to perform "light" level lifting, whereas Dr. Brownstein limited the plaintiff to lifting only 10 pounds occasionally.  (Tr. 833-6).  However, on further questioning of the VE, the expert testified that the light level jobs he had provided in response to the hypothetical question might be reduced 20 to 25 percent with a 10 pound lifting restriction, but they would not be eliminated.  (Tr. 57-8).

The plaintiff objects that two of the unskilled light jobs listed by the VE, parking lot attendant and machine attendant, would be incompatible with Dr. Brownstein's restrictions because she would have no control over how long she would be able to hold her head in a static position (which the physician had limited to "rarely") or look down (which the physician limited to "occasionally.")  (Tr. 835). However, the plaintiff has cited no vocational evidence to support her position, and the ALJ could reasonably have relied on the opinion of the VE in this matter.  <u>See generally</u> <u>Conn v. Secretary of Health and Human Services</u>, 51 F.3d 607, 610 (6th Cir. 1995).  On the other hand, the plaintiff correctly points out that Dr. Brownstein's indication that the plaintiff could sit for six hours in an eight hour day (Id.), which was noted by the VE in his testimony (Tr. 55), was qualified with the comment that such an ability would depend on the day and symptoms (Tr. 835).  This could only mean that Dr. Brownstein felt that Mrs. Abdon's capacity would be reduced part of the time, and could potentially mean that she would be incapable of performing full-time work.  The plaintiff is correct that the unexplained omission of Dr. Brownstein's qualification renders the VE's testimony unreliable, as it no longer fully represents the opinion of the treating source.

Additionally, the plaintiff objects to the rejection of the other two treating source opinions.

 Dr. Perkins, who treated the plaintiff for her headache complaints, opined that the plaintiff's "daily mild headaches" and "moderate to severe" headaches three

to four times per month would cause her to miss work approximately 4 days per month.  (Tr. 837-40).  The VE testified that with this amount of absenteeism, the plaintiff could not be employed on a full-time competitive basis.  (Tr. 57).  The ALJ rejected this opinion, on the ground that there was no documentation of such frequent migraine headaches.  (Tr. 12, 17).  In fact, the ALJ found that migraine headaches, while "medically determinable," were not "severe."  (Tr. 12).

Subjective allegations of pain are evaluated under criteria outlined in Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986).  There must be evidence of an underlying medical condition, and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.  Id. at 853.

It has been noted that migraine headaches "are not traced easily to an objective medical condition."   McCormick v. Secretary of Health and Human Services, 666 F.Supp. 121,123 (E.D. Mich.1987), aff'd, 861 F.2d 998 (6th Cir.1988). Thus, the plaintiff would have difficulty in meeting the first prong of the Duncan test for this alleged problem.  In finding that headaches were a medically determinable impairment, the ALJ implicitly accepted that there was evidence of an underlying medical condition, but in saying that there was no documentation of frequent

migraine headaches, the ALJ was essentially finding that the second prong of the Duncan test was not met.

The ALJ reached her conclusion without discussion of the office notes of Dr. Perkins. His examination and testing suggested that the plaintiff was having cervicogenic headaches (e.g., Tr. 685), and prescribed the medication Topamax to be used prophylactically, along with Zanaflex.  (Tr. 677-80).  He later prescribed Imitrex, a medication used for the relief of migraine headaches.  Physicians' Desk Reference, (Bette Kennedy, ed., 2011), p. 1416.  (Tr. 837).  He noted in his functional capacity assessment, moreover, that his patient was not a malingerer.  (Tr. 838).  He conducted objective testing which suggested the presence of mild carpal tunnel syndrome (Tr. 841-3) as well as obtaining an MRI scan of the cervical spine showing a disc bulge and mild central canal stenosis (Tr. 684).  While the court makes no finding that this evidence satisfies the second prong of the Duncan test, it is clear that the ALJ did not perform a proper analysis in order to make such a determination.

Dr. Grefer, the orthopedist, restricted his patient to rarely lifting less than 10 pounds, and sitting, standing, and walking less than eight hours per day, in addition to other restrictions.  (Tr. 803-5).  The VE testified that a person with these restrictions could not perform any work.  (Tr. 56).

The ALJ used the same conclusory language to discredit both Dr. Perkins and Dr. Grefer, saying that their opinions were not supported by objective findings

11

and "fail to reveal the type of significant clinical and laboratory abnormalities one would expect to produce the claimant's pain, and the doctors did not specifically address this weakness." (Tr. 17). The Commissioner's regulations require an ALJ's rejection of the treating physician opinion to be supported by "good reasons" which are "supported by the evidence in the case record, and [which] must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p, at *5.   Even if substantial evidence otherwise supports the opinion of the ALJ, a remand will be required where the ALJ fails to give " good reasons." Wilson v. Commissioner of Social Security, 378 F.3d 541, 543-6 (6th Cir. 2004).  As the Sixth Circuit recently noted in an unpublished decision, "[T]here must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion . . . gets the short end of the stick."  Friend v. Commissioner of Social Security, 375 F.Appx. 543 (6th Cir. 2010).  Contrary to the defendant's assertions, this is not a case in which the treating source opinion was so patently deficient that he could not possibly credit it.  Dr. Grefer diagnosed a spinal strain, degenerative disc disease with disc bulging spondylitic changes at C5-6, a possible chest wall injury, degenerative changes, a patellofemoral incongruity, and rotator cuff pathology of the left shoulder.  (Tr. 802).  He also opined that his patient was not a malingerer, and stated that her impairments were reasonably consistent with her symptoms.  (Tr. 803).  His office notes show a restriction in the

range of motion of the cervical and lumbar spine and he reviewed extensive x-rays, CT scans, and MRI reports.  (Tr. 591-3, 778-80, 807-8).  Although he did not find that the MRI reports showed significant problems (Tr. 808), he felt that her findings were suggestive of a "strain and sprain situation" (Tr. 807), and that her condition was worthy of referral to a pain management specialist (Tr. 779).  Although the plaintiff had difficulty in finding a pain specialist to accept her medical card (Tr. 778) she did eventually undergo evaluation by pain specialist Dr. Allen Rison, who conducted a physical examination and reviewed the MRI reports.  (Tr. 817-22).  Dr. Rison assessed the plaintiff as having a displacement of the lumbar intervertebral disc, lumbosacral spondylosis, and sacroiliitis, and although he did not specify functional restrictions, he prescribed a very strong pain medication, Percocet.  (Tr. 822-3).  In view of all these factors, Dr. Grefer's opinion was not "patently deficient," and the ALJ's discussion of the other medical evidence of record did not meet the goal of providing "good reasons" for rejecting the treating opinions, as in Nelson v. Commissioner of Social Security, 195 F.Appx. 462 (6th Cir. 2006).  Consequently, the court concludes that the ALJ's decision did not meet the requirements of Wilson.

The plaintiff also argues that the ALJ erred in failing to note that a consultative psychological examiner, Dr. Terry Lester, had indicated that she would be "substantially impaired" in relating to others. In fact, Dr. Lester found that she would not be substantially impaired in relating to others. (Tr. 288). The hypothetical mental restrictions are supported by Dr. Lester's conclusions, and as he was the

only examining mental health expert to offer an opinion regarding functional capacity, the ALJ could reasonably have accepted his limitations.

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 22nd day of December, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**